IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KALIEF RINGGOLD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-721 (MN) |
| | ) | |
| CLAIRE DEMATTEIS, Commissioner, | ) | |
| Delaware Department of Corrections, | ) | |
| ROBERT MAY, Warden, and ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| DELAWARE, | ) | |
| | ) | |
| Respondents[1]. | ) | |

| | | |
|---|---|---|
| RASHAUN MILLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-725 (MN) |
| | ) | |
| CLAIRE DEMATTEIS, Commissioner, | ) | |
| Delaware Department of Corrections, | ) | |
| MARVIN MAILEY, Bureau Chief, and | ) | |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF DELAWARE, | ) | |
| | ) | |
| Respondents. [2] | ) | |

---

[1]     Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

[2]     Bureau Chief Marvin Mailey replaced former Bureau Chief James Elder, an original party to the case.  *See* Fed. R. Civ. P. 25(d).

| | |
|---|---|
| JOSE PEREZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 17-836 (MN) |
| | ) |
| CLAIRE DEMATTEIS, Commissioner, Delaware Department of Corrections, KOLAWOLE AKINBAYO, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | ) ) ) ) ) |
| | ) |
| Respondents. [3] | ) |

| | |
|---|---|
| JACOB SANTIAGO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 17-906 (MN) |
| | ) |
| CLAIRE DEMATTEIS, Commissioner, Delaware Department of Corrections, KOLAWOLE AKINBAYO, Warden, Community Corrections, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | ) ) ) ) ) ) |
| | ) |
| Respondents. | ) |

| | |
|---|---|
| DESMOND SCOTT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 17-908 (MN) |
| | ) |
| CLAIRE DEMATTEIS, Commissioner, Delaware Department of Corrections, KOLAWOLE AKINBAYO, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | ) ) ) ) ) |
| | ) |
| Respondents. | ) |

---

[3]     Warden Kolawole Akinbayo replaced former Warden Steven Wesley, an original party to the case. *See* Fed. R. Civ. P. 25(d).

2

| | |
|---|---|
| ANDRE L. RAMSEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 17-976 (MN) |
| | ) |
| CLAIRE DEMATTEIS, Commissioner, | ) |
| Delaware Department of Corrections, | ) |
| ROBERT MAY, Warden, and ATTORNEY | ) |
| GENERAL OF THE STATE OF | ) |
| DELAWARE, | ) |
| | ) |
| Respondents. | ) |

| | |
|---|---|
| NAKEEM WATSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 17-1197 (MN) |
| | ) |
| CLAIRE DEMATTEIS, Commissioner, | ) |
| Delaware Department of Corrections, | ) |
| KOLAWOLE AKINBAYO, Warden, and | ) |
| ATTORNEY GENERAL OF THE STATE | ) |
| OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

| | |
|---|---|
| MAURICE WRIGHT, | ) |
| | ) |
| Petitioner, | ) |
| | ) C.A. No. 17-1198 (MN) |
| v. | ) |
| | ) |
| CLAIRE DEMATTEIS, Commissioner, | ) |
| Delaware Department of Corrections, | ) |
| KOLAWOLE AKINBAYO, Warden, and | ) |
| ATTORNEY GENERAL OF THE STATE | ) |
| OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

**MEMORANDUM OPINION**

J. Brendan O'Neill and Nicole Marie Walker, Office of Defense Services for the State of Delaware, Wilmington, Delaware.

      Counsel for Petitioners Kalief Ringgold, Rashaun Miller, Jose Perez, Jacob Santiago, Desmond Scott, Andre L. Ramsey, Nakeem Watson, and Maurice Wright.


Matthew C. Bloom, Kathryn Joy Garrison, and Carolyn Shelley Hake, Deputy Attorney Generals, Delaware Department of Justice, Wilmington, Delaware.

      Counsel for Respondents.


September 4, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court are eight separate but nearly-identical § 2254 Petitions. One Petition is filed by each of the following: Kalief Ringgold (C.A. No. 17-721-MN); Rashaun Miller (C.A. No. 17-725-MN); Jose Perez (C.A. No. 17-836-MN); Jacob Santiago (C.A. No. 17-906-MN); Desmond Scott (C.A. No. 17-908-MN); Andre Ramsey (C.A. No. 17-976-MN); Nakeem Watson (C.A. No. 17-1197-MN); and Maurice Wright (C.A. No. 17-1198-MN).

The eight Petitioners were convicted of drug-related offenses between 2010 and 2013. Petitioner Miller's conviction was the result of a stipulated bench trial, and the convictions for the remaining seven Petitioners (Ringgold, Perez, Santiago, Scott, Ramsey, Watson, and Wright) were the result of guilty pleas. Starting in the spring of 2014, Delaware's Office of Defense Services ("ODS") filed Rule 61 motions[4] in the Superior Court on behalf of the instant Petitioners asserting the identical claim for relief arising from issues relating to an evidence scandal in the Office of the Chief Medical Examiner ("OCME"), namely, that the OCME misconduct constituted impeachment material under *Brady v. Maryland*, 373 U.S. 83 (1963). The seven Petitioners who entered guilty pleas (Ringgold, Perez, Santiago, Scott, Ramsey, Watson, and Wright) also argued that their guilty pleas were rendered involuntary under *Brady v. United States*, 373 U.S. 742 (1970) because the State failed to disclose evidence of OCME misconduct prior to the entry of their guilty pleas. The ODS, which had filed Rule 61 motions on behalf of numerous other defendants convicted of drug-related charges, chose Ringgold's, Miller's, and six others' Rule 61 motions for the Superior Court to decide ("Rule 61/OCME Test Case"). *See State v. Miller*, 2017 WL 1969780, at *1 (Del. Super. Ct. May 11, 2017). Because the Rule 61 motions filed by the ODS in numerous other cases were identical to those in the Rule 61/OCME Test Case, the parties agreed that the

---

[4]     A Rule 61 motion is a motion for post-conviction relief filed pursuant to Delaware Superior Court Criminal Rule 61.

1

Superior Court's decision in the Rule 61/OCME Test Case would resolve many of the remaining outstanding Rule 61 motions pending before the Superior Court (including the Rule 61 motions for the other six Petitioners here: Perez, Santiago, Scott, Ramsey, Watson, and Wright).  *Id*.  The Superior Court denied the Rule 61 motions in the Rule 61/OCME Test Case on May 11, 2017, *Id*., and then denied the Rule 61 motions in the other cases after that disposition.  None of the instant eight Petitioners appealed the denial of their Rule 61 motions.

Instead, they filed the § 2254 Petitions presently pending before the Court.  Each Petition raises the argument that the OCME misconduct constituted powerful impeachment material under *Brady v. Maryland*.  (D.I. 1 in *Ringgold*, C.A. No. 17-721-MN; D.I. 2 in *Miller*, C.A. No. 17-725-MN; D.I. 3 in *Perez*, C.A. No. 17-836-MN; D.I. 2 in *Santiago*, C.A. No. 17-906-MN; D.I. 2 in *Scott*, C.A. No. 17-908-MN; D.I. 2 in *Ramsey*, C.A. No. 17-976-MN; D.I. 2 in *Watson*, C.A. No. 17-1197-MN; D.I. 2 in *Wright*, C.A. No. 17-1198-MN).  The seven Petitioners who pleaded guilty (Ringgold, Perez, Santiago, Scott, Ramsey, Watson, and Wright) also contend that their guilty pleas were involuntary under *Brady v. United States* because the State failed to disclose evidence of the OCME misconduct prior to the Petitioner entering a guilty plea.  Soon after filing the instant Petitions, the parties in each case filed a joint motion to stay briefing until Judge Stark resolved *Boyer v. Akinbayo*, C.A. No. 17-834-LPS, a case with the same procedural issue (*i.e.*, whether the petitioner's failure to appeal the Superior Court's denial of his Rule 61 motion precluded habeas relief due to his purposeful failure to exhaust state remedies).  On November 6, 2018, Judge Stark dismissed Boyer's habeas petition as procedurally barred and declined to issue a certificate of appealability.  *See Boyer v. Akinbayo*, 2018 WL 5801545 (D. Del. Nov. 6, 2018).[5]  Boyer filed a

---

[5]     Several portions of this Memorandum Opinion are identical to what Judge Stark wrote in *Boyer*.  Although the Court has independently considered the issues raised, it does not see any reason to reformulate the relevant analysis when Judge Stark's opinion thoroughly addresses the issues in dispute.

notice of appeal with the Third Circuit Court of Appeals.  On April 11, 2019, the Third Circuit denied Boyer's request for a certificate of appealability because "[j]urists of reason could not debate that the District Court properly denied Appellant's 28 U.S.C. § 2254 habeas petition."  (*See* D.I. 23 in *Boyer*, C.A. No. 17-834-LPS)

Following the decision in *Boyer*, the Court lifted the stay in each of the instant eight proceedings.  Thereafter, the State filed an Answer in opposition to each Petition.  In all of the eight Answers, the State contends that the Court is procedurally barred from reviewing the sole claim for relief because the Petitioners did not exhaust state remedies for that claim.  The State also contends that six of the eight Petitions are time-barred.  (D.I. 13 in *Ringgold*, C.A. No. 17-721-MN; D.I. 14 in *Miller*, C.A. No. 17-725-MN; D.I. 15 in *Perez*, C.A. No. 17-836-MN; D.I. 14 in *Santiago*, C.A. No. 17-906-MN; D.I. 15 in *Scott*, C.A. No. 17-908-MN; D.I. 15 in *Wright*, C.A. No. 17-1198-MN).  None of the eight Petitioners filed replies.

The Court has considered each Petition, Answer, and all other materials submitted in each of the instant eight cases.  Because the briefing in the eight cases is nearly identical in all material with respect to the substantive and procedural legal issues, and particularly with respect to the exhaustion/procedural bar issue, the Court finds that judicial economy would be served by their review and disposition together.  Therefore, the Court *sua sponte* consolidates these cases for decision by a single Memorandum Opinion and Order to be filed in each case.[6]  *See* Fed. R. Civ. P. 42(a); *In re TMI Litigation*, 193 F.3d 613, 724 (3d Cir. 1999) ("The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues."); *Ellerman Lines, Ltd. v.*

_____

[6]     Because the exhaustion/procedural bar issue is identical and dispositive in each of the cases, the Court will not address the statute of limitations argument raised by the State in six of the Petitions.  For simplicity, the Court's citations in the remainder of this Opinion are to the docket for Petitioner Ringgold, C.A. No. 17-721-MN, unless otherwise noted.

*Atlantic & Gull Stevedores, Inc.,* 339 F.2d 673, 675 (3d Cir. 1964) (noting that a court may consolidate cases *sua sponte* or on motion of a party).  For the reasons that follow, the Court will dismiss all the Petitions and deny the relief requested.

## I.     BACKGROUND

### A.     OCME CRIMINAL INVESTIGATION

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

### B.     PROCEDURAL BACKGROUND FOR EACH PETITIONER

### 1.     Kalief Ringgold (C.A. No. 17-721-MN)[7]

On February 7, 2013, Ringgold pleaded guilty to drug dealing with an aggravating factor. (D.I. 1 at 4; D.I. 1-1 at 3).  That same day, the Superior Court sentenced Ringgold to thirteen years at Level V incarceration, suspended after three years for Level III probation.  (D.I. 1 at 4; D.I. 1-2).  Ringgold did not file a direct appeal.

On April 3, 2013, Ringgold filed a *pro se* Rule 35(b) motion for modification of sentence. (D.I. 1-1 at 3).  The Superior Court granted that motion on April 25, 2014 and modified Ringgold's sentence to indicate that he was ordered to undergo a substance abuse evaluation, participate in the Key Program or its equivalent while at Level V incarceration, and participate in the Crest Program at Level IV supervision.  (D.I. 1-1 at 3).  Ringgold filed a second *pro se* Rule 35(b) motion on October 29, 2013, which the Superior Court denied on November 6, 2013.  (D.I. 1-1 at 3). Ringgold did not appeal that decision.

On June 19, 2014, the ODS filed a Rule 61 motion on Ringgold's behalf based on the misconduct at the OCME.  (D.I. 1-1 at 3).  The Superior Court denied Ringgold's Rule 61 motion on May 11, 2017.  *See Miller*, 2017 WL 1969780, at *16.  Ringgold did not appeal that decision.

On June 12, 2017, the ODS filed in this Court a § 2254 Petition on Ringgold's behalf, asserting that the OCME misconduct constituted impeachment material under *Brady v. Maryland* and he might not have pleaded guilty if he had known that he might be able to cast doubt on the chemical composition of the drugs.  (D.I. 1 at 18-19).  Ringgold contends that his lack of knowledge of the OCME evidence scandal was material to his decision to plead guilty and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*.  (*Id*. at 10-19).  The

---

[7]     The D.I. references in subsections 1 through 8 correspond to the C.A. No. listed in each heading.

State filed an Answer asserting that Ringgold's Petition should be dismissed as procedurally barred because Ringgold, like Boyer, did not present his claim to the Delaware Supreme Court on direct or post-conviction appeal.  (D.I. 13 at 14-23).  The State alternatively asserts that the Petition should be dismissed as time-barred.  (*Id*. at 7-14).

### 2.   <u>Rashaun Miller (C.A. No. 17-725-MN)</u>

On  September 7, 2010, following a stipulated trial wherein Petition waived a jury trial and did not contest the State's evidence established at the suppression hearing, the Superior Court found Miller guilty of possession with intent to deliver heroin ("PWITD") and possession of a firearm during the commission of a felony ("PFDCF").  (D.I. 2 at 4; D.I. 12-2 at 4).  The Superior Court sentenced Miller to fifteen years at Level V incarceration, suspended after ten years for decreasing levels of supervision.  (D.I. 2-2; D.I. 12-4 at 5; D.I. 14 at 2).  Miller appealed, and the Delaware Supreme Court affirmed his convictions and sentence on August 11, 2011.  *See Miller v. State*, 25 A.3d 768 (Del. 2011).

On October 12, 2011, Miller filed a *pro se* Rule 61 motion, which the Superior Court denied on March 24, 2013.  (D.I. 2-1 at 6-10).  The Delaware Supreme Court affirmed that decision on January 14, 2014.  *See Miller v. State*, 83 A.3d 738 (Table), 2014 WL 169804, at *4 (Del. Jan. 14, 2014).

On April 30, 2014, the ODS filed a Rule 61 motion for post-conviction relief on Miller's behalf based on the OCME misconduct.  (D.I. 12-27) .  The Superior Court denied Miller's Rule 61 motion on May 11, 2017.  *See Miller*, 2017 WL 1969780, at *16.; (D.I. 1-3).  Miller did not appeal that decision.

On June 12, 2017, the ODS filed in this Court a § 2254 Petition on Miller's behalf, asserting the same claim that the OCME misconduct constituted impeachment material under *Brady v.*

*Maryland* as already described above with respect to Ringgold's Petition.  (D.I. 2 at 10-14).  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Ringgold's Petition.  (D.I. 14 at 11-24).  The State alternatively asserts that Miller's Petition should be dismissed as time-barred and as moot.  (D.I. 14 at 6-11, 20-24).

### 3.   Jose Perez (C.A. No. 17-836-MN)

On September 17, 2012, Perez pleaded guilty to Tier 5 possession.  (D.I. 3 at 4; D.I. 3-1 at 1).  On that same day, the Superior Court sentenced Perez to ten years at Level V incarceration, suspended after two years for eighteen months Level III probation.  (D.I. 3-2).  Perez did not appeal his conviction or sentence.

On December 6, 2012, Perez filed a *pro se* Rule 61 motion, which the Superior Court withdrew at Perez's request on January 25, 2013.  (D.I. 3-1 at 2-3).  On December 12, 2012, Perez filed a *pro se* Rule 35(b) motion for modification of sentence.  (D.I. 3-1 at 2).  The Superior Court denied the Rule 35(b) motion on January 3, 2013, and Perez did not appeal that decision.  (D.I. 3-1 at 2).

On December 18, 2013, Perez filed a second *pro se* Rule 35(b) motion, which the Superior Court denied on January 10, 2014.  (D.I. 3-1 at 3).  Perez did not appeal that decision.

On May 9, 2014, the ODS filed a Rule 61 motion on Perez's behalf based on the misconduct at the OCME.  (D.I. 3-1 at 3; D.I. 16-8).  The Superior Court denied the Rule 61 motion on June 21, 2017.  (D.I. 3-4).  Perez did not appeal that decision.

On March 12, 2015, while Perez's Rule 61 motion was still pending and he was serving the probationary portion of his sentence, the Superior Court found that he had violated his probation ("VOP") due to his January 13, 2015 arrest for shoplifting under $1,500.  (D.I. 3-1 at 3-4).  The Superior Court sentenced him for the Tier 5 possession conviction to eight years at Level

V, suspended for eight years at Level IV VOP Center, suspended in turn after 120 days for eighteen months of Level III probation.  (D.I. 3-1 at 4; D.I. 15 at 3; D.I. 18-8).  Perez did not appeal.

On June 21, 2017, the Superior Court denied Perez's Rule 61 motion.  (D.I. 3-4).  Perez did not appeal that decision.

On June 22, 2017, the ODS filed in this Court a § 2254 Petition on Perez's behalf, asserting the same OCME misconduct/involuntary guilty plea claim as already described above with respect to Ringgold's Petition.  (D.I. 3  in Civ. A. 17-836-MN)  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Ringgold's Petition.  (D.I. 15 at 14-23 in Civ. A. 17-836-MN)  The State alternatively asserts that the Petition should be dismissed as time-barred and as moot.  (*Id.* at 8-14, 23-26)

### 4.      Jacob Santiago (C.A. No. 17-906 (MN)

On June 6, 2012, Santiago pleaded guilty to drug dealing with an aggravating factor.  (D.I. 2 at 4; D.I. 2-1 at 2).  The Superior Court immediately sentenced him to ten years at Level V incarceration, suspended after six months for decreasing levels of supervision.  (D.I. 2-2).

On January 16, 2013, Santiago filed a motion for modification of sentence.  (D.I. 2-1 at 2). The Superior Court granted the motion on January 28, 2013, modifying the home confinement portion of Santiago's sentence to home confinement or GPS  monitoring.  (D.I. 2-1 at 2; D.I. 12-4).  On July 18, 2013, Santiago filed a motion for correction of sentence, which the Superior Court denied on August 5, 2013. (D.I. 2-1 at 2-3; D.I. 12-5; D.I. 12-6).  On April 9, 2014, the Superior Court found that Santiago had violated the term of his probation, and sentenced him to nine years at Level V, suspended after two years for six months of probation.  (D.I. 2-1 at 4; D.I. 12-8). Santiago appealed, and the Delaware Supreme Court affirmed the VOP September 30, 2014.  *See Santiago v. State*, 2014 WL 4930679 (Del. Sept. 30, 2014).

On May 9, 2014, the ODS filed a Rule 61 motion on Santiago's behalf based on the OCME misconduct. (D.I. 12-9). The Superior Court denied Santiago's Rule 61 motion on June 27, 2017. (D.I. 2-4). Santiago did not appeal that decision.

On July 6, 2017, the ODS filed in this Court a § 2254 Petition on Santiago's behalf, asserting the same OCME misconduct/involuntary guilty plea claim as already described above with respect to Ringgold's Petition. (D.I. 2). The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Ringgold's Petition. (D.I. 14 at 9-17). The State alternatively asserts that the Petition should be denied as time-barred. (*Id.* at 5-9).

### 5.    Desmond Scott (C.A. No. 17-908-MN)

On October 26, 2010, Scott pleaded guilty to trafficking in heroin. (D.I. 2 at 4; D.I. 2-1 at 2). The Superior Court immediately sentenced Scott to ten years at Level V incarceration, suspended after three years for eighteen months of Level III probation. (D.I. 2-2). Scott did not file a direct appeal.

On June 7, 2013, the Superior Court found Scott to be in violation of his probation and sentenced him to seven years at Level V incarceration, suspended after eighty-eight days for twenty-seven months of decreasing levels of supervision. (D.I. 13-4). On December 19, 2014, the Superior Court found Scott in violation of his probation again, and sentenced him to three years at Level V incarceration with no probation to follow. (D.I. 13-8).

On May 13, 2014, the ODS filed a Rule 61 motion on Scott's behalf. (D.I. 13-5). The Superior Court denied the motion on June 27, 2017. (D.I. 2-4). Scott did not appeal that decision.

On July 6, 2017, the ODS filed in this Court a § 2254 Petition on Scot's behalf, asserting the same OCME misconduct/involuntary guilty plea claim as already described above with respect

to Ringgold's Petition.  (D.I. 2).  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Turner's Petition.  (D.I. 15 at 15-25).  The State alternatively asserts that Scott's Petition should be dismissed as time-barred. (D.I. 15 at 7-15).

###### 6.   Andre L. Ramsey (C.A. No. 17-976-MN)

On January 17, 2013, Ramsey pleaded guilty to one count of drug dealing, one count of possession of a firearm by a person prohibited ("PFBPP"), and identity theft.  (D.I. 17-12 at 61). On April 5, 2013, the Superior Court sentenced Ramsey as follows: (1) five years at Level V for the identity theft conviction; (2) five years at Level V for the PFBPP conviction; and (3) eight years, suspended after two years for decreasing levels of supervision, for the drug dealing conviction.  (D.I. 17-4).  The Superior Court corrected the sentence two times: (1) on April 8, 2013, to give Ramsey credit for 264 days served and to reflect that Ramsey's eight year sentence for drug dealing was to be suspended for two years at a Level IV halfway house, to be suspended, in turn, after six months for eighteen months of Level III probation; and (2) on April 23, 2013, to reflect that the 264 days credit was only for the identity theft conviction.  (D.I. 16 at 3; D.I. 17-5; D.I. 17-6).  Ramsey appealed, and the Delaware Supreme Court affirmed Ramsey's convictions and sentence.  *See Ramsey v. State*, 77 A.3d 272 (Table), 2013 WL 5522598 (Del. Oct. 3, 2013).

On May 29, 2013, Ramsey filed a *pro se* motion to suspend or reduce his sentence for PFBPP.  (D.I. 17-1 at 5).  The Superior Court denied the motion.  (D.I. 17-8).  Ramsey did not appeal.

On April 30, 2014, the ODS filed a Rule 61 motion on Ramsey's behalf based on the OCME misconduct.  (D.I. 17-16).  The Superior Court denied Ramsey's Rule 61 motion on July 7, 2017.  (D.I. 2-4).  Ramsey did not appeal that decision.

On July 18, 2017, the OPD filed in this Court a § 2254 Petition on Ramsey's behalf, asserting the same OCME misconduct/involuntary guilty plea claim as already described above with respect to Ringgold's Petition.  (D.I. 2).  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Ringgold's Petition.[8]  (D.I. 16 at 10-18).

### 7.     Nakeem Watson (C.A. No. 17-1197-MN)

On October 11, 2013, Watson pleaded guilty to possession with intent to deliver cocaine ("PWITD"), possession of a firearm during the commission of a felony ("PFDCF"), and assault in a detention facility.  (D.I. 15-9).  On January 17, 2014 the Superior Court sentenced him to ten years at Level V incarceration, suspended after five years for decreasing levels of supervision.  (D.I. 2-2; D.I. 14 at 1-2).  Watson did not appeal his conviction or sentence.

On May 16, 2014, Watson filed a *pros se* Rule 61 motion.  (D.I. 15-1 at 7).  On November 21, 2014, the ODS filed a Rule 61 motion on Watson's behalf, based on the OCME misconduct.  (D.I. 15-1 at 8; D.I. 15-12).  On August 21, 2017, the Superior Court denied the ODS' Rule 61 motion in Watson's case, and denied Watson's *pro se* Rule 61 motion on September 19, 2018.  (D.I. 2-4; D.I. 15-31).

On August 24, 2017, the ODS filed in this Court a § 2254 Petition on Watson's behalf, asserting the same OCME misconduct/involuntary guilty plea claim as already described above with respect to Ringgold's Petition.  (D.I. 2).  The State filed an Answer asserting the same failure

---

[8]     Since filing his Petition, Ramsey has pleaded guilty to new crimes and found to be in violation of probation for prior convictions, and he has filed numerous motions concerning his sentence(s) in the Delaware Superior Court, all of which have been denied.  (D.I. 16 at 4-5).

to exhaust/procedurally barred argument it made in connection with Ringgold's Petition.[9]  (D.I. 14 at 6-14).

### 8.     Maurice Wright (C.A. No. 17-1198-MN)

On September 30, 2010, Wright pleaded guilty to possession with intent to deliver a narcotic schedule II controlled substance.  (D.I. 13-3).  The Superior Court immediately sentenced him to fifteen years at Level V incarceration, suspended after six months for eighteen months of decreasing levels of supervision.  (D.I. 2-2).  Wright did not appeal his sentence or conviction.

On July 25, 2012, the Superior Court found that Wright had violated his probation and sentenced him to five years at Level V, suspended after four years for one year at Level III probation.  (D.I. 13-4).

On May 6, 2014, the ODS filed a  Rule 61 motion on Wright's behalf.  (D.I. 13-5).  On September 23, 2015, while the Rule 61 motion was pending, Wright filed a *pro se* Rule 35 motion for sentence correction.  (D.I. 13-15.).  The Superior Court denied the Rule 35 motion on December 23, 2015.  (D.I. 13-17).  The Superior Court denied the Rule 61 motion on August 21, 2017.  (D.I. 2-4).  Wright did not appeal that decision.

On August 24, 2017, the ODS filed in this Court a § 2254 Petition on Wright's behalf, asserting the same OCME misconduct/involuntary guilty plea claim as already described above with respect to Ringgold's Petition.  (D.I. 2).  The State filed an Answer asserting the same failure to exhaust/procedural default argument it made in connection with Turner's Petition.  (D.I. 15 at

---

[9]     The Superior Court found that Watson violated his probation on two separate occasions: July 12, 2016 and March 9, 2018.  (D.I. 15-1 at 9-11).  On March 9, 2018, the Superior Court sentenced Watson to four years at Level V, with credit for 179 days previously served, suspended after six months with no probation to follow.  (D.I. 15-30).  Watson's sentence in this case, however, was not set to begin until February 15, 2022, after he completed his prison term in another case.  (D.I. 14-1).

15-24).  The State alternatively asserts that the Petition should be dismissed as time-barred.  (*Id.* at 6-15).

II.   **GOVERNING LEGAL PRINCIPLES**

A.   **Antiterrorism and Effective Death Penalty Act of 1996**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism."  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

B.   **Exhaustion and Procedural Default**

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by fairly presenting all claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their

merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner may be excused from exhausting state remedies when there is either an absence of an available State corrective process or the existence of circumstances, such as futility or inordinate delay, that render such processes ineffective.  *See* 28 U.S.C. § 2254(b)(1)(B); *Duckworth v. Serrano*, 454 U.S. 1 (1981).  Situations falling within the "ineffective corrective process" exception to the exhaustion requirement include those instances when "(1) the state corrective process is so deficient as to render any effort to obtain relief futile []; (2) acts of state officials have, in effect, made state remedies unavailable to the petitioner []; or (3) 'inordinate delay' in state proceedings has rendered state remedies ineffective."  *Kozak v. Pennsylvania*, 2012 WL 4895519, at *4 (M.D. Pa. Oct 15, 2012).  When a failure to exhaust is excused due to an ineffective corrective process, the court may review a claim on its merits without engaging in the procedural default analysis.  *See, e.g., Lee v. Stickman*, 357 F.3d 338, 344 (3d Cir. 2004); *Story v. Kindt*, 26 F.3d 402, 405-06 (3d Cir. 1994); *Woodruff v. Williams*, 2016 WL 6124270, at *1 (E.D. Pa. Oct. 19, 2016).

If a petitioner's failure to exhaust, however, does not fall within the aforementioned "ineffective corrective process" exception, and state procedural rules bar the petitioner from seeking further relief in state courts, the claims, although technically exhausted, are procedurally defaulted.  *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is technically exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).  A federal

14

court cannot consider the merits of procedurally defaulted claims unless the petitioner establishes cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will result absent review of the claims. *See Lines*, 208 F.3d at 160.

## III.   DISCUSSION

### A.   Exhaustion

All eight Petitioners acknowledge that they did not exhaust state remedies for their habeas claim due to their failure to appeal the denial of their Rule 61 motions to the Delaware Supreme Court. (D.I. 1 at 4). Instead, they present three arguments as to why the Court should excuse their failure to exhaust on the basis of futility: (1) exhausting state remedies by appealing the Superior Court's Rule 61 decision would have been futile because of the Superior Court's inordinate delay in adjudicating his Rule 61 motion ("inordinate delay" excuse); (2) appealing the denial of their Rule 61 motions to the Delaware Supreme Court would have been futile because that court has rejected identical claims based upon the OCME misconduct in other cases for postconviction relief ("futility on the merits" excuse); and (3) appealing the denial of their Rule 61 motions to the Delaware Supreme Court would have been futile because Rule 61 does "not provide an adequate opportunity for [Petitioner]s to obtain relief" ("futility due to deficiency of Rule 61 proceedings" excuse). (D.I. 1 at 4-7). The State contends that Petitioners' failure to exhaust should not be excused for any of these futility reasons and, because state criminal procedural rules preclude them from returning to the state courts for further review, the claim is now technically exhausted but procedurally defaulted. (D.I. 14 at 14-19). The Court will discuss Petitioners' arguments *in seriatim*.

1.      **Futility Due to Inordinate Delay During Rule 61 Proceeding**

"[I]nexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable," thereby warranting excusing the exhaustion requirement.  *Story*, 26 F.3d at 405.  "The existence of an inordinate delay does not automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required."  *Lee*, 357 F.3d at 341.

Neither the United States Supreme Court nor the Third Circuit has defined the specific amount of time that constitutes inordinate delay in a petitioner's post-conviction proceedings.  As explained by the Third Circuit,

> We stated in *Wojtczak v. Fulcomer,* 800 F.2d 353, 354 (3d Cir. 1986), that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable."  In that case, thirty-three months had passed after the petitioner's PCRA filing without resolution.  *Id.*  This, we found, excused the petitioner's failure to exhaust his state court remedies.  *Id.* at 356.  The thirty-three month delay in *Wojtczak* remains the shortest delay held to render state collateral proceedings ineffective for purposes of the exhaustion requirement.

*Cristin v. Brennan,* 281 F.3d 404, 411 (3d Cir. 2002) (refusing to excuse exhaustion in the face of twenty-seven month delay); *see also Lee*, 357 F.3d at 343-44 (excusing exhaustion after eight year delay); *Coss v. Lackawanna County Dist. Att'y,* 204 F.3d 453, 460 (3d Cir. 2000) (*en banc*) (excusing exhaustion after seven year delay), *rev'd on other grounds,* 532 U.S. 394 (2001); *Story*, 26 F.3d 402, 406 (3d Cir. 1994) (excusing exhaustion after nine year delay).  Generally, courts in the Third Circuit have excused a petitioner's failure to exhaust state remedies where the following three factors are present: (1) the delays in the state court proceedings have amounted to three, five, eleven, or twelve years;[10] (2) no meaningful action towards resolution has been taken in the state

---

[10]      *See Story*, 26 F.3d at 405-06 (citing cases).

court; and (3) the delay was not attributable to the petitioner. *See Simmons v. Garman*, 2017 WL 2222526, at *3 (E.D. Pa. Feb. 14, 2017).

Federal courts consider the degree of progress made by the state courts when determining whether a delay is inordinate. *See Lee*, 357 F.3d at 342. In cases where courts have excused exhaustion due to an inordinate delay, the delay in petitioners' state post-conviction proceedings was still ongoing at the time of federal habeas review. *See Wojtczak*, 800 F.2d at 354 (unresolved after thirty-three months); *cf. Cristin*, 281 F.3d at 411 (concluding that thirty-three month delay did not excuse exhaustion under the inordinate delay exception as state court ruled on Cristin's state post-conviction petition one week after he filed his federal habeas petition); *Wallace v. Dragovich*, 143 F. App'x 413, 418 (3d Cir. 2005) (finding that petitioner's failure to exhaust was not excusable on basis of inordinate delay, where previously stalled state habeas proceeding had resumed). The Court has not identified any cases holding that a petitioner's failure to exhaust can be excused on the basis of a delay in a state post-conviction proceeding when that delay has already ended. *See, e.g.*, *Vreeland v. Davis*, 543 F. App'x 739, 741-42 (10th Cir. 2013).

Here, none of the eight Petitioners appealed the denial of their Rule 61 motions. In fact, they admit they purposefully decided to forgo post-conviction appeals in order to proceed immediately with federal habeas petitions. (D.I. 1 at 4). Petitioners assert that the average three-year span between the filing of their Rule 61 motions and the Superior Court's adjudication of those motions constitutes inordinate delay and the possibility of continued delay in the Delaware Supreme Court "unnecessarily risk[ed] mooting [Petitioners'] federal claims before [they] [would be] able to reach Federal Court." (D.I. 1 at 6).

The court rejected an almost identical argument in *Boyer*, because Boyer's post-conviction proceeding was not in a state of suspended animation when he filed his habeas Petition. *See Boyer*,

17

2018 WL 5801545, at *4-5.  The court also noted that Boyer's mistrust of the Delaware Supreme Court's ability to decide his post-conviction appeal within a certain time-frame was insufficient to excuse him from exhausting state court remedies for his claim.  *See Boyer*, 2018 WL 5801545, at *4-5.

Like Boyer, Petitioners did not file their Petitions while their Rule 61 motions were in a state of suspended animation.  As a result, Petitioners also cannot rely on allegations of inordinate delay to excuse their failure to exhaust.

### 2.      Futility on the Merits

Petitioners also ask the Court to excuse their failure to exhaust on the ground that it would have been futile to present their claim to the Delaware Supreme Court, because that court has already considered and rejected numerous identical or similar OCME misconduct claims.  (D.I. 1 at 5-6).  But futility on the merits does not constitute cause for a procedurally defaulted claim. *Engle v. Isaac*, 456 U.S. 107, 130 (1982) (petitioner "may not bypass the state courts simply because he thinks they will be unsympathetic to the claim").  The Third Circuit has applied *Engle*'s reasoning in the context of exhaustion, opining that "likely futility on the merits [] in state court of a petitioner's habeas claim does not render that claim exhausted within the meaning of § 2254(b)(1)(A) so as to excuse the petitioner's failure to exhaust that claim by presenting it in state court before asserting in a federal habeas petition."  *Parker v. Kelchner*, 429 F.3d 58, 64 (3d Cir. 2005).  More specifically, "[a]llowing petitioners to bypass state court merely because they believe that their constitutional claims would have failed there on the merits would fly in the face of comity and would deprive state courts of a critical opportunity to examine and refine their constitutional jurisprudence."  *Id.*

Both the procedural history of Petitioners' Rule 61 proceedings and the instant "futility on the merits" argument are substantially similar to the procedural history of Boyer's Rule 61 proceeding and Boyer's "futility on the merits" argument. *See Boyer*, 2018 WL 5801545, at *4-5. Applying the reasoning in *Engle* and *Parker*, the Court declined to excuse Boyer's failure to exhaust his claims on the basis of "likely futility on the merits." *Boyer*, 2018 WL 5801545, at *5. The Third Circuit agreed; it declined to grant Boyer a certificate of appealability, explicitly stating, "[w]e have rejected the argument that likely futility on the merits of a claim in state court excuses a habeas petitioner's failure to exhaust that claim." (*See* D.I. 23 in *Boyer*, C.A. No. 17-834-LPS). Given these circumstances, the Court concludes that Petitioners' failure to exhaust state remedies is not excused on the ground of likely futility on the merits.

### 3.      Deficient Rule 61 procedures

In their last attempt to justify the failure to exhaust state remedies, Petitioners contend that Rule 61's procedures are so deficient that the Rule would not have provided them with an opportunity to obtain relief, thereby demonstrating that it would have been futile to present their claim to the Delaware Supreme Court on post-conviction appeal. (D.I. 1 at 7). However, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Dist. Att'y's Office for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009). Federal courts may excuse the exhaustion requirement when "it appears that the prisoner's rights have become an 'empty shell' or that the state process is a 'procedural morass' offering no hope of relief." *Hankins v. Fulcomer*, 941 F.2d 246, 250 (3d Cir. 1991).

Here, Petitioners do not substantiate their contention that Rule 61 is inadequate, nor do they cite any case finding that Rule 61 is a deficient corrective process. In fact, this Court has

consistently found that Rule 61 is an independent and adequate state procedural ground that precludes federal habeas review. *See, e.g., Trice v. Pierce*, 2016 WL 2771123, at *4 (D. Del. May 13, 2016); *Maxion v. Snyder*, 2001 WL 848601, at *10 (D. Del. July 27, 2001). Petitioners' conclusory allegations about the inadequacy of Rule 61 do not demonstrate that its procedures are an "empty shell" or a "procedural morass offering no hope for relief."

In sum, for the aforementioned reasons, the Court concludes that Petitioners' failure to exhaust state remedies does not fall within the narrow "futility" exception to the exhaustion doctrine.

### B.     Procedural Default

Having determined that Petitioners' intentional failure to appeal the denial of their Rule 61 motions is not excusable, Petitioners' habeas claim remains unexhausted. At this juncture, any attempt by Petitioners to exhaust state remedies by presenting the claim in new Rule 61 motions would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as successive under Rule 61(i)(2). *See* Del. Super. Ct. Crim R. 61(i)(1) (establishing a one year deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (barring second or successive Rule 61 motion unless certain pleading requirements are satisfied). Consequently, the Court must treat the claim as technically exhausted but procedurally defaulted, which means that the Court cannot review the merits of the claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review. *See Lines*, 208 F.3d at 160.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner

must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

To the extent Petitioners' three-pronged futility argument should also be viewed as an attempt to establish cause for their procedural default, the argument is unavailing. In order to establish cause, Petitioners must demonstrate that an external factor prevented them from appealing the denial of their Rule 61 motion. Nothing prevented Petitioners, however, from filing post-conviction appeals – they simply elected not to do so. Thus, Petitioners' belief that it would have been futile to present their claim to the Delaware Supreme does not constitute cause for their procedural default.

In the absence of cause, the Court does not need to address prejudice. The Court further concludes that the miscarriage of justice exception does not excuse Petitioners' procedural default. Although the seven Petitioners who pleaded guilty (Ringgold, Perez, Santiago, Scott, Ramsey, Watson, and Wright) contend that there is a reasonable probability that they would not have

pleaded guilty had they known about the OCME misconduct, and also that they may have sought and received "a substantial reduction in the plea-bargained sentence as a condition of forgoing a trial" (D.I. 1 at 18), neither of these assertions constitutes new reliable evidence of their actual innocence.  Similarly, although Petitioner Miller – who was convicted after a stipulated bench trial – contends that "there is a significant likelihood that the prosecutor's response to respondent's discovery request misleadingly induced defense counsel to believe that the chemist and lab results could not be impeached on the basis of the widespread thefts and failures at OCME," and also that it is "unrealistic to believe that an experienced attorney armed with this information would have chosen to stipulate to evidence supporting an essential element of an offense" (D.I. 2 at 13 in *Miller*, C.A. No. 17-725-MN), neither of these assertions constitutes new reliable evidence of Miller's actual innocence.  Accordingly, the Court will deny the instant Petitions as procedurally barred from federal habeas review.

## IV.   EVIDENTIARY HEARING

As an alternative request for relief, Petitioners summarily ask the Court to "hold an evidentiary hearing and allow full briefing on his claim."  (D.I. 1 at 19)  It is unclear whether they request an evidentiary hearing on the underlying OCME misconduct/involuntary guilty plea claim or on the procedural default of that claim.

### A.   Evidentiary Hearing On OCME Misconduct/Involuntary Guilty Plea Claim

The AEDPA permits evidentiary hearings on habeas review in a limited number of circumstances.[11]  *See Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).  For instance, 28 U.S.C. § 2254(e) provides:

---

[11]     Prior to the enactment of the AEDPA, "the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  Evidentiary hearings, however, were mandatory in six specific circumstances:  (1) the merits of the factual dispute were not resolved in the state hearing;

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

> (A)  the claim relies on –
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  The "initial inquiry" when determining whether to grant an evidentiary hearing is whether the petitioner has "failed to develop the factual basis" of the claim in state court. *See* 28 U.S.C. 2254(e) (2); *Williams v. Taylor*, 529 U.S. 420, 433 (2000).  "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 433.  "Diligence will require in the usual case that the prisoner, at

---

(2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  Although the AEDPA has not changed the "basic rule" of leaving the decision to grant an evidentiary to the discretion of the district courts, it has imposed certain limitations on the exercise of that discretion via § 2254(e)(2). *See Cristin*, 281 F.3d at 413.

a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. When determining if a petitioner has been diligent, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435. In short, if the factual basis of the claim was not developed but the petitioner was diligent in pursuing the claim in state court, the opening phrase of § 2254(e)(2) does not bar an evidentiary hearing. *See Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 614 (3d Cir. 2011).

However, "a petitioner who diligently but unsuccessfully seeks an evidentiary hearing in state court still is not **entitled** to an evidentiary hearing in federal court under AEDPA. Rather, [. . .] whether to hold a hearing for a petitioner who is not at fault under § 2254(e)(2) remains in the discretion of the district court, and depends on whether the hearing would have the potential to advance the petitioner's claim." *Taylor v. Horn*, 504 F.3d 416, 444 (3d Cir. 2007) (emphasis in original); *see Schriro*, 550 U.S. at 473 (explaining that the "basic" pre-AEDPA rule leaving the decision on whether to grant an evidentiary hearing to the "sound discretion of district courts" has not changed under AEDPA). "Where a petitioner fails to forecast to the district court evidence outside the record that would help his cause or 'otherwise to explain how his claim would be advanced by an evidentiary hearing,' a court is within its discretion to deny the claim." *Buda v. Stickman*, 149 F. App'x 86, 90 (3d Cir. 2005).

Here, although evidentiary hearings were not held in any of the eight Petitioners' Rule 61 proceedings, Petitioners do not explain how the factual basis of their claim needs further development as part of their federal habeas review.[12] In fact, two of the eight Petitioners –

---

[12]   At the risk of repetition, the Court emphasizes that all of the Rule 61 motions filed by the instant Petitioners presented the identical OCME misconduct impeachment evidence claim, as well as the related involuntary guilty plea argument in seven of the Rule 61 motions, the Superior Court denied the eight Rule 61 motions for substantially the same reason, namely, because Petitioners either stipulated to the drug evidence (Miller) or

Ringgold (C.A. No. 17-721-MN) and Miller (C.A. No. 17-725-MN) – knowingly decided to forego a Rule 61 evidentiary hearing when they agreed with the Superior Court's assessment that an evidentiary hearing was not warranted in their Rule 61 proceedings because the issues were legal in nature.[13] (*See* D.I. 14-26 at 7-8, 35 in *Ringgold*, C.A. No. 17-721-MN). With respect to those two cases, the Superior Court explained that, "factually the critical factor appears to be whether the defendant pleaded guilty or proceeded to trial," and it was "willing to rule on th[e] outstanding [Rule 61] Motions based upon the pleadings filed to date," subject to the parties' agreement. *Id*. at 8. In turn, although it is not entirely clear, it appears as though the remaining six Petitioners (Perez, Santiago, Scott, Ramsey, Watson, and Wright) may have implicitly agreed to forego an evidentiary hearing in their cases.[14] Given these circumstances, the Court is inclined to find that there was no failure to develop the factual basis of the claim at the state court level which, in turn, would eliminate the need for an evidentiary hearing here. Nevertheless, exercising prudence, the Court will continue with its analysis.

_____

knowingly and voluntarily admitted during their plea colloquy that they committed the drug crimes (Ringgold, Perez, Santiago, Scott, Ramsey, Watson, and Wright).

[13]   The fact that Ringgold and Miller knowingly waived an evidentiary hearing in state court, and admitted that the issue was legal in nature, suggests that they may not be seeking an evidentiary hearing on the substantive claim presented in this proceeding but, rather, that they are seeking an evidentiary hearing on the issue of procedural default.

[14]   In a letter filed in all eight cases, the ODS asserted that, "[o]n March 21, 2017, [the Superior] Court stated that it 'will proceed to rule on the OCME motions currently pending in New Castle County based upon the submissions which have been made.'" (D.I. 16-25 at 1 in *Perez*, C.A. No. 17-836-MN). Attached to that letter is a list of numerous individuals with pending Rule 61 motions premised on the OCME misconduct, and the names of all eight Petitioners are on that list. (*Id*. at 3-8). Because, in that same letter, the OPD did not challenge the Superior Court's expressed intent to rule on the Rule 61 motions on the basis of the filings, it would appear that the remaining six Petitioners (Perez, Santiago, Scott, Ramsey, Watson, and Wright) knowingly waived an evidentiary hearing.

Although Ringgold and Miller explicitly agreed to forego an evidentiary hearing, it appears that they technically satisfied § 2254(e)(2)'s diligence requirement because, at a minimum, the Superior Court's letter indicates that they originally sought an evidentiary hearing in the manner prescribed by state law. The Court reaches the same conclusion with respect to the remaining six Petitioners (who may or may not have implicitly agreed to forego an evidentiary hearing). Because it appears that Petitioners exercised the type of diligence contemplated by § 2254(e)(2), § 2254(e) does not bar an evidentiary hearing,[15] which means that the Court retains discretion over the decision to conduct an evidentiary hearing.

Nevertheless, Petitioners have not met their burden of showing that an evidentiary hearing would be meaningful in relation to the OCME misconduct/involuntary guilty plea claim. Their single-sentence request for a hearing does not forecast any evidence beyond that existing in the record that would help their cause, nor does it explain how a new hearing would advance their claim. Indeed, none of the eight Petitioners filed replies to the State's argument that an evidentiary hearing is not warranted. Moreover, given either their stipulation regarding the drug evidence during a stipulated bench trial (Miller) or admission of guilt during their guilt plea colloquy and their failure to assert their actual innocence (Ringgold, Perez, Santiago, Scott, Ramsey, Watson, and Wright), Petitioners have not alleged facts that, if true, would permit them to prevail on their OCME misconduct/involuntary guilty plea claim. Accordingly, the Court concludes that an

---

[15]   Alternatively, even if the Court were to conclude that Petitioners did not satisfy the diligence requirement of § 2254(e)(2), then the Court would only be permitted (but not required) to hold an evidentiary hearing if Petitioners demonstrated that their cases fell within the very limited circumstances set forth in § 2254(e)(2)(A) and (B). Given that Petitioners' single-sentence request for an evidentiary hearing does not come close to satisfying the requirements of § 2254(e)(2)(A) or (B), in this alternate scenario, § 2254(e)(2) would bar the Court from holding a hearing in all eight cases.

evidentiary hearing on the OCME misconduct/involuntary guilty plea claim is not warranted in any of the instant cases.

### B.    Evidentiary Hearing on Procedural Default

The Third Circuit has held that § 2254(e)(2) does not bar an evidentiary hearing to determine if a petitioner can establish cause and prejudice to avoid a procedural default. *See Cristin*, 281 F.3d at 416-17 (holding that "the plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level."). Consequently, it is within the Court's discretion to hold an evidentiary hearing on Petitioners' excuses for their failure to appeal the denial of their Rule 61 motions.

As previously discussed,[16] the Court has considered, and rejected, Petitioners' reasons for the procedural default, and they do not indicate any other evidence/reason that may excuse their failure to appeal the denial of their Rule 61 motions.  Therefore, the Court will not hold an evidentiary hearing on the issue of procedural default.

## V.    <u>CERTIFICATE OF APPEALABILITY</u>

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[16]    *See supra* at III. A and B.

The Court has concluded that the instant eight Petitions do not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability in any of the instant seventeen cases.

## VI.   **CONCLUSION**

For the reasons discussed, the Court concludes that all eight Petitions must be denied.  An appropriate Order will be entered.